**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |
|---|---|
| **BANK OF AMERICA, N.A.,** *et al.*, | * |
| PLAINTIFFS, | * |
| v. | *     CASE NO.: PWG-12-3266 |
| **DAVID KISSI,** *et al.*, | * |
| DEFENDANTS. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs, a bank and a mortgage servicer, have brought this case against a pair of repeat litigants whose relentless, frivolous, and vexatious behavior has led to the imposition of prefiling injunctions barring them from filing new cases in this and several other courts. Plaintiffs have moved for summary judgment on their claim for an injunction barring Defendants from bringing any new cases against Plaintiffs or their affiliates in any Maryland state court and seeking to grant this Court jurisdiction over any cases filed in violation of such an injunction. Defendants have cross-moved for summary judgment. Because a federal court cannot rely on an injunction to take jurisdiction over unrelated state-law cases and, in any event, the undisputed facts show that an injunction is not warranted, I deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

### I.    BACKGROUND

#### A.    Procedural History

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in that party's favor. *Ricci*

*v. DeStefano*, 557 U.S. 557, 585–86 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Where, as here, the Court is presented with cross-motions for summary judgment, the facts relevant to each motion must be considered in the light most favorable to the nonmovant. *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). Unless otherwise stated, this background is composed of undisputed facts. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

The long and convoluted history of litigation between the parties is laid out in detail in *Bank of America, N.A. v. Kissi*, No. PWG-12-3266, 2013 WL 4804824 (D. Md. Sept. 6, 2013) ("*Kissi I*"), and need not be set forth again here. In short, Defendants David Kissi and his wife, Edith Truvillion, have a long and well-documented history of engaging in repeated, frivolous litigation in this and other courts. *Id.* at *2–4. Their relationship with Plaintiffs Bank of America, N.A. ("BANA") and Specialized Loan Servicing, LLC ("SLS") dates back to 2006, when Defendants took out a mortgage on their property located at 4305 Ammendale Road, Beltsville, Maryland, serviced by BANA and sub-serviced by SLS. *Id.* at *4.

In April 2012, Defendants initiated their first lawsuit against BANA, SLS, and an officer of SLS in the Circuit Court for Prince George's County, which was removed to this Court and was dismissed in June 2012. *Id.* Defendants responded by filing several motions for reconsideration, requesting transfer of the case to a court in California, and seeking recusal of the presiding judge, the Honorable J. Frederick Motz; all were denied. *Id.* Defendants also filed a petition with the Judicial Panel on Multidistrict Litigation ("JPML") that was closed upon dismissal of the underlying case, and sought appellate review, which was denied for failure to comply with an injunction in a related Kissi case. *Id.* Undaunted, Defendants initiated at least

four other actions involving Plaintiffs—in the Circuit Court for Prince George's County, the United States District Court for the Central District of California, and the Superior Court for the District of Columbia—as well as numerous petitions to the JPML, all of which were dismissed. *Id.* at *4–6.

As a result of his repetitive, frivolous, and obstreperous conduct in this Court, on March 14, 2013 then-Chief Judge Deborah K. Chasanow entered a prefiling injunction prohibiting Kissi from initiating any cases in the United States District Court for the District of Maryland without first obtaining permission of the chief judge. Mem. Op. & Order ("Kissi Injunction"), *In re David M. Kissi*, No. MC-13-33 (D. Md. March 14, 2013), ECF No. 4. Similar injunctions have been entered by the JPML, *In re Kissi*, No. 2425, 2013 WL 489023, at *3–4 (J.P.M.L. Feb. 6, 2013); the D.C. Superior Court, Order, *Kissi v. Capitol Bank*, No. 2012-CA-8122B (D.C. Super. Ct. Jan. 3, 2013); the Fourth Circuit, *Kissi v. Pramco II, LLC*, 401 F. App'x 787 (4th Cir. 2010); the United States District Courts for the District of Delaware, *Kissi v. Pramco II LLC*, No. 09-113-JJF, 2009 WL 2424433 (D. Del. Aug. 5, 2009); the United States District Court for the Northern District of Ohio, *Kissi v. Clement*, No. 4:08 CV 1784, 2008 WL 7526326 (N.D. Ohio Oct. 3, 2008); and the Court of Federal Claims, *Kissi v. United States*, 102 Fed. Cl. 31 (Ct. Fed. Cl. 2011).

Plaintiffs commenced this action on November 6, 2012, by filing their two-count complaint setting forth claims for injunctive relief and abuse of process. Compl. ¶¶ 35, 40, ECF No. 1. In an initial round of motions, Defendants sought, *inter alia*, to dismiss the complaint and file their own $100 million counter-claim and to transfer or stay this case. *See* Defs.' Mot. to Dismiss & Countercl., ECF No. 8; Defs.' Mot. to Transfer, ECF No. 23; Defs.' Mot. to Dismiss Mot. for Legal Fees, ECF No. 26; Defs.' Mot. to Stay, ECF No. 32; Truvillion's Mot. to Dismiss

& to Stay Countercl., ECF No. 34. Plaintiffs sought to dismiss Defendants' counterclaim and moved for partial summary judgment. *See* Pls.' Mot. for Partial Summ. J., ECF No. 11; Pls.' Mot. to Dismiss Countercl., ECF No. 10. In a memorandum opinion and order entered on September 6, 2013, *inter alia*, I struck Defendants' counterclaim as improperly raised and granted Defendants' motion to dismiss with respect to the claim for abuse of process. *Kissi I*, 2013 WL 4804824, at *10.

With respect to Plaintiffs' motion for summary judgment, I found that there was no genuine dispute of material fact with respect to two of the four elements required for a prefiling injunction under *Cromer v. Kraft Foods North America, Inc.*, 390 F.3d 812, 818 (4th Cir. 2004): "(1) the party's history of litigation, in particular whether he has filed vexations, harassing, or duplicative lawsuits; [and] (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass." *Id.* Because of the myriad cases holding that Defendants had engaged in frivolous, vexatious, and meritless litigation—including the Kissi Injunction in this Court—I found that Defendants were collaterally estopped from arguing that their conduct has not been frivolous, and their status as bad-faith, vexatious, and frivolous litigants was established as matter of law. *Kissi I*, 2013 WL 4804824, at *13.

However, I also found that Plaintiffs had not provided sufficient evidence to satisfy the remaining two *Cromer* elements: "(3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions" beyond the nationwide prefiling injunction then sought by Plaintiffs. *Id.* at *10 (quoting *Cromer*, 390 F.3d at 818). Accordingly, I denied Plaintiffs' motion for summary judgment without prejudice, noting:

> With respect to the burden caused by Kissi's conduct, the effect on the courts is well-documented. *See, e.g.*, Kissi Inj [] ("The Court also finds that [Kissi] has

> become a substantial burden on judicial resources."). This case has shown Kissi to be no less burdensome on the Court than in his prior encounters with the judicial system. However, Plaintiffs have presented no evidence respecting the burden on *Plaintiffs* caused by Kissi's conduct, and by seeking to make this Court the gatekeeper on any filing made by Kissi in any court, the injunction sought by Plaintiffs seems certain significantly to increase the burden on this Court, rather than reduce it.
>
> But most damning to Plaintiffs' motion for summary judgment is their failure to show any *facts* as to the inadequacy of alternative sanctions or why the sanction they seek would fill the remaining gaps. Indeed, since this lawsuit was filed, Defendants' ability to drag Plaintiffs into court has been curtailed significantly by the imposition of the Kissi Injunction, the DC Injunction, *Kissi v. Capitol Bank*, No. 2012-CA-8122B [], and the JPML's order that no further filings will be permitted with respect to, *inter alia*, this matter []. Plaintiffs have not shown why these alternative sanctions are not sufficient under the circumstances.
>
> Finally, a prefiling injunction must be "narrowly tailored to fit the particular circumstances of the case before the District Court." *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993); *see also Cromer*, 390 F.3d at 819 (quoting *Brow* and examining whether injunction was narrowly tailored). Plaintiffs seek, in essence, a limitless injunction preventing Kissi and Truvillion from pursuing any action whatsoever in any court in the United States, without the say-so of a judge of this Court. *See* Pls.' Summ. J. Mot. Proposed Order 5–6, ECF No. 11-32. Plaintiffs have not shown any facts to support the conclusion that this is narrowly tailored. To the contrary, the relief they seek is as sweepingly broad as it is destined to be ineffective.

*Id.* at *13.

In order to keep a tight rein on Defendants' tendency towards obstreperous litigation conduct and to stem the rising tide of filings in this case, I entered a Case Management Order, ECF No. 40, allowing for tightly controlled discovery and prohibiting the filing of any motion without first making a showing that the filing was not frivolous or duplicative. Discovery was completed by March 28, 2014, Status Report, ECF No. 74, and the parties were granted leave to file cross-motions for summary judgment by a Letter Order entered April 1, 2014, ECF No. 76. Plaintiffs filed their motion for summary judgment ("Defs.' Mot. for Summ. J.") on April 23, 2014, ECF No. 77, with a supporting Memorandum ("Defs.' Summ. J. Mem."), ECF No. 77-1, Defendants filed their consolidated opposition and cross-motion (Pls.' Opp'n & Cross-Mot.") on

5

May 15, 2014, ECF No. 80, and Plaintiffs replied (Pls.' Summ. J. Reply") on May 30, 2014, ECF No. 81. Defendants sought leave to file additional responses and, pursuant to the Case Management Order, were allowed to file a single reply ("Defs.' Summ. J. Reply"), ECF No. 85, although they subsequently improperly filed an additional reply on August 12, 2014, ECF No. 86. The motions for summary judgment are now before me, and having reviewed the filings, I find a hearing is not required. Loc. R. 105.6.

Near the end of the summary judgment briefing schedule, Defendants also sought a continuance on the grounds that they had retained counsel who was pursuing a settlement on Defendants' behalf. Defs.' Mot. Seeking Permission to Add to Joint Mem. Combined with a Request for a Continuance, ECF No. 83. I denied the request for a continuance on July 28, 2014. Letter Order, ECF No. 84. Since then, Defendants' counsel repeatedly has expressed his interest in pursuing a settlement, *see* Letter from Thomas P.F. Kiely to Court (Dec. 15, 2014), ECF No. 90; Letter from Thomas P.F. Kiely to Court (Jan. 11, 2015), ECF No. 93, but Plaintiffs have not reciprocated, *see* Letter from Aaron Neal to Court, ECF No. 91 (Dec. 15, 2014); Letter from Aaron Neal to Court (Jan. 14, 2015), ECF No. 94. Noting that Plaintiffs cannot be compelled against their will to settle a case, I denied Defendants' request for a settlement conference. Letter Order, ECF No. 92.

In addition, and notwithstanding the Case Management Order and Defendants' earlier motion to dismiss, Defendants have sought leave to file a second, successive motion to dismiss without setting forth any new grounds. *See* Request to File Mot. to Dismiss, ECF No. 95. I denied the request. Letter Order, ECF No. 97. Defendants have responded with a motion for reconsideration of that denial that continues to fail to comply with the Case Management Order or to present adequate grounds for a successive motion to dismiss or for reconsideration. *See*

Defs.' Mot. for Reconsideration, ECF No. 98. Both the Request and the Motion for Reconsideration are difficult to understand and display several of the oddities common to Defendants' *pro se* filings, making it impossible to determine who is actually writing Defendants' motions: Defendants or their attorney. Regardless of authorship, the filings fail to comply with the Case Management Order and are meritless.

B.   **Additional Facts in Support of Summary Judgment**

Plaintiffs have incorporated by reference their original partial summary judgment briefing and also have identified new facts and arguments in support of summary judgment. With respect to the adequacy of alternative sanctions, Plaintiffs point to the fact that Kissi had been prosecuted and found guilty of two counts of bankruptcy fraud, three counts of obstruction of justice, and two counts of criminal contempt arising out of his abusive litigation practices. Defs.' Summ. J. Mem. 3–4; *see also* Judgment, *United States v. Kissi*, No. AW-05-254 (D. Md. Sept. 10, 2007), ECF No. 163. And after his release from imprisonment, Kissi was found to have committed contempt of court on three occasions and continued to file frivolous suits in disregard of a condition of supervised release prohibiting him to do so without permission from his probation officer. *See* Judgment, *United States v. Kissi*, No. AW-05-254 (D. Md. Feb. 13, 2013), ECF No. 285. As Plaintiffs argue, this demonstrates that even the sanction of imprisonment was insufficient to prevent Defendants' continued abuse of the courts. Plaintiffs do concede that additional prefiling injunctions have reduced the ability of Defendants to bring further frivolous claims somewhat, *id.* at 5, and have revised the relief they seek, now requesting only a prefiling injunction preventing Defendants from filing lawsuits in Maryland state courts without leave of this Court, instead of seeking a nationwide prefiling injunction to be supervised by this Court, *id.* at 10.

Plaintiffs also have provided additional specificity regarding the burden created by Defendants' vexatious litigation. Plaintiff BANA has provided an affidavit stating that litigation against Defendants has cost them $8,000 in legal fees and substantial burdens because of the difficulty in deciphering and organizing Kissi and Truvillion's filings. BANA Aff., Defs.' Summ. J. Mem. Ex. 4, ECF No. 77-6. Plaintiff SLS has provided an affidavit stating that its litigation costs have amounted to $30,613.88, plus an additional $2,700.50 in fees incurred but not yet paid. SLS Aff., Defs.' Summ. J. Mem. Ex. 3, ECF No. 77-5.[1]

Plaintiffs also have identified—but have not provided complete citations or information regarding—a list of cases brought against them by Kissi and Truvillion, some of which were not enumerated—and may not yet have existed—during the prior round of partial summary judgment briefing. Defs.' Summ. J. Mem. 2–3. Defendants contest their involvement in at least one of those cases. Truvillion Aff., Pls.' Opp'n & Cross-Mot. Ex, ECF No. 80-1. Defendants also raise numerous factual contentions relating to the merits of their past litigation with Plaintiffs. *See* Pls.' Opp'n & Cross-Mot.; Truvillion Aff., Pls.' Opp'n & Cross-Mot. Ex, ECF No. 80-1. Issues such as Plaintiffs' ownership of the note underlying Defendants' mortgage or alleged misconduct by Plaintiffs in this or other cases are relevant only insofar as they demonstrate that Defendants' past conduct was not frivolous. But because the frivolous and vexatious nature of Defendants' litigation history is established as a matter of law by collateral estoppel, I need not, and will not, consider Defendants' arguments to the contrary. Rather, the only issue that properly is before me is whether Plaintiffs can demonstrate sufficient burden and

---

[1] Although Plaintiffs do not make a clear representation one way or the other, presumably these figures do not include any costs associated with this case, in light of the fact that Plaintiffs were well aware that filing a suit against Kissi and Truvillion likely would result in a steady flow of vexatious filings of dubious merit and, therefore, any resulting wounds seemingly are self-inflicted.

the inadequacy of alternative sanctions so as to be entitled to the prefiling injunction that they seek.

## II.     STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light favorable to the nonmovant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. To satisfy this burden, the non-moving party "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). Although the Court "must draw all reasonable inferences in favor of the non-moving party," that party "may not create a genuine issue of material fact through mere speculation, or building one inference upon another." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Runnenbaum v. NationsBank*, 123 F.3d 156, 163 (4th Cir. 1997); *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817–18 (4th Cir.

1995)). Indeed, the existence of only a "scintilla of evidence" is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 251. Instead, the admissible evidentiary materials submitted must show facts from which the finder of fact could reasonably find in favor of the non-moving party. *Id.*

### III. DISCUSSION

#### A. Summary Judgment

Plaintiffs have taken to heart my concern that, based upon their initial showing, "the relief they seek is as sweepingly broad as it is destined to be ineffective." *Kissi I*, 2013 WL 4804824, at *13. Plaintiffs also have recognized that "[t]he contempt powers of the Court would not likely suffice to deter Kissi from further frivolous litigation, as he has already shown that he is willing to go to prison rather than refrain from filing further lawsuits." Pls.' Summ. J. Mem. 11. Accordingly, they have revised their expectations for relief downward and now ask me to establish a gatekeeping regime as follows:

First, before filing a claim against Plaintiffs or any related party in any Maryland state court, Defendants would be required to seek leave of this Court based on a showing that the filing contains new, non-frivolous claims with adequate factual support. *Id.* at 11–12. Copies of the application for leave and the Court's order would be served upon counsel for Plaintiffs, but no response would be permitted. *Id.* at 12. In the event that any claim is filed against Plaintiffs or a related party in any Maryland court without first obtaining leave, it "shall be immediately removable to this Court pursuant to federal question jurisdiction through the Anti-Injunction Act and All Writs Act." *Id.* Once removed, this Court would be required to dismiss the case *sua sponte* upon a finding that leave had not been granted, without requiring any filings by BANA or SLS and without allowing Kissi or Truvillion to raise new or additional claims. *Id.*

As a threshold matter, by seeking a more limited form of relief, Plaintiffs seek constructively to amend their Complaint pursuant to Fed. R. Civ. P. 15(b). "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed. R. Civ. P. 15(b). Most courts to consider the question have found that this rule applies at the summary judgment stage as well, and that "when 'both parties squarely address[] [a claim] in their summary judgment briefs,' it may be argued that the complaint was constructively amended." *Handzlik v. United States*, 93 F. App'x 15, 16 (5th Cir. 2004) (quoting *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998) (alterations in original)); *see also McCree v. Se. Pa. Transp. Auth.*, No. 07-4908, 2009 WL 16660 (E.D. Pa. Jan. 22, 2009) (reviewing relevant case law). Although Kissi and Truvillion's pleadings rarely can be read to address any relevant issue squarely, they have done so with respect to Plaintiffs' request for an injunction regarding filing in Maryland state courts. *See* Defs.' Opp'n & Cross-Mot. 4 (arguing "if, as the Plaintiffs claim, Kissi is enjoined in filing cases in Federal Courts in Maryland and D.C. except in State Court in Maryland, then the Plaintiffs should go to the Maryland State Courts to apply for such Injunction"). Accordingly, I find that Plaintiffs' Complaint constructively has been amended to seek the injunction that they describe in their Summary Judgment Memorandum and the attached proposed order, ECF No. 77-2.

Unfortunately for Plaintiffs, however, the relief they now seek would exceed the jurisdiction of this Court because the injunction sought by Plaintiffs appears to ask me to assert jurisdiction over cases that are not within this Court's subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Plaintiffs argue that,

were I to grant the injunction they seek, cases not otherwise within this Court's jurisdiction would become removable "pursuant to federal question jurisdiction through the Anti-Injunction Act and All Writs Act." But although an injunction properly issued by a federal court in an action over which it had subject matter jurisdiction necessarily would provide a federal remedy for its violation, I am aware of no principle of law (nor do Plaintiffs direct me to any) that would allow me, by entering an injunction, to expand the reach of Article III, Section 2 of the Constitution or 28 U.S.C. § 1331 to new cases outside the scope of federal jurisdiction.

Plaintiffs have provided no legal authority to support such an expansion of jurisdiction, notwithstanding that they are required to do so by Local Rule 105.1. But it appears that Plaintiffs must be relying on a line of cases in which federal courts were permitted to retain jurisdiction over federal proceedings that were closed and later reopened, *see, e.g.*, *Orlando Residence, Ltd. v. Nelson*, 565 F. App'x 212, 218 (4th Cir. 2014) (finding federal jurisdiction was retained when the conditions of the district court's dismissal never were met), or over the administration of settlement agreements, *see, e.g.*, *Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003). But these cases relied entirely on the exercise of ancillary jurisdiction over claims "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also Kokonnen*, 511 U.S. at 381–82 (analyzing the exercise of jurisdiction over the contract claim arising from breach of a settlement agreement under the principle of ancillary jurisdiction). Ancillary or supplemental jurisdiction only applies to claims brought within a suit for which there already is a basis for federal jurisdiction; "[t]he court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." *Peacock v. Thomas*, 516 U.S. 349, 355 (1996).

> In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists

12

> when ancillary claims are asserted in the same proceeding as the claims conferring original jurisdiction. Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit.

*Id.*

The cases over which Plaintiffs ask me to extend this Court's jurisdiction are not cases *arising under* claims over which this court has exercised jurisdiction and therefore are not appropriate for relief under the All Writs Act. "While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999). The writ sought by Plaintiffs would not be used to enforce an existing ruling of this or any federal court, but rather to bring future-filed state-law claims under the purview of the federal courts. "[T]he All-Writs Act is not an independent grant of jurisdiction," *White v. Nat'l Football League*, 41 F.3d 402, 409 (8th Cir. 1994), *abrogated on other grounds by*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and a state-law claim is not transformed into a federal one simply because it brushes up against a separate federal order, *see, e.g.*, *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 862–63 (8th Cir. 2002) (federal jurisdiction could not be premised on the fact that defendant was alleged to have run afoul of a federal consent decree).

And even were I to grant the relief Plaintiffs request, it would be in the form of an injunction backed up by the threat of contempt proceedings for its violation. Plaintiffs have conceded that this would not be an effective deterrent because "contempt proceedings for violation of an injunction would be time consuming by the parties and the court, and are not likely to act as a deterrent or otherwise 'streamline court dockets.'" Pls.' Summ. J. Mem. 11. In fact, even Kissi's recent incarceration appears to have left him undeterred from filing further

frivolous suits. *See id.* at 4. Granting Plaintiffs' requested relief when there is so little evidence that doing so would be effective is not appropriate on the facts before me.

Plaintiffs also have not shown that the injunction they seek is warranted by the burdens imposed by Defendants. First, to the extent that I must look at the burden on the Court (and not only on the parties), *see Cromer*, 390 F.3d at 818, this case stands apart from those cited by Plaintiffs because this Court already has adequately protected itself and others (including Plaintiffs) from the burden posed by Kissi and Truvillion's frivolous and vexatious filings. Kissi Inj. Indeed, Kissi is not even permitted to enter this courthouse without "specific permission by the Chief Judge of the United States District Court for the District of Maryland or the judge presiding in a specific case." *Id.* at 6. In fact, until Plaintiffs chose to bring this suit against Defendants—thereby providing them with an opportunity to re-litigate claims previously resolved against them—this Court's prefiling injunction had proven effective. On the other hand, by bringing this case, Plaintiffs have given Kissi and Truvillion precisely what they appear to seek: a forum in which they cannot be prevented from raising a seemingly inexhaustible stream of cryptic and dubious legal theories in their defense. And by asking this Court to take responsibility for Defendants' behavior in other fora and to absolve Plaintiffs from having to review every complaint filed by Kissi in any Maryland state court, Plaintiffs seek to increase, not decrease, the burden on this Court. *See Solomon v. Kess-Lewis*, No. PWG-13-2436, 2013 WL 7049266, at *4 (D. Md. Oct. 1, 2013) ("With each new document filed, the Clerk must review, docket and file the material and the Court must spend considerable time reviewing [the plaintiff's] lengthy filings only to conclude either the material is meritless, vexatious, or malicious in nature."). Accordingly, the burden on the Court clearly counsels against granting the injunction Plaintiffs seek.

Plaintiffs have presented facts to show that Defendants' frivolous litigation has imposed upon them a measure of cost and burden resulting in over $33,000 in legal expenses paid or incurred by SLS relating to a total of fourteen suits brought by Defendants, SLS Aff. ¶¶ 3–4, Pls.' Summ. J. Mem. Ex. 3, ECF No. 77-5, and $8,000 paid by BANA, BANA Aff. ¶ 3, Pls.' Summ. J. Mem. Ex. 4, ECF No. 77-6. Plaintiffs correctly note that prefiling injunctions have been issued based on considerably lower costs and fewer frivolous lawsuits. *See, e.g.*, *Beatty v. BAC Home Loans Servicing, LP*, No. RDB-12-3188, 2013 WL 3868098, at *4 (D. Md. July 24, 2013) (finding injunction appropriate after "three meritless actions within two and a half years"); *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *4 (finding the "cumulative burden on the parties" to be "substantial" based on $4,000 in litigation costs per party and the fact that a frivolous litigant had brought suit against an adversary's counsel). However, this case appears unique in that the burden on the Court and the burden on the parties—ordinarily assumed by *Cromer* to be so closely aligned as to be considered as a single factor—point in opposite directions. *Cf. Whitehead v. Viacom*, 223 F. Supp. 2d 715, 726–27 (D. Md. 2002) ("Plaintiff's proven blatant disregard *for this court and the judicial system as a whole* suggests that there is no end in sight to Plaintiff's frivolous and vexatious filings." (emphasis added)). In essence, Plaintiffs seek to cast off from themselves the burden posed by Kissi and Truvillion's vexatious litigation practices and to place it squarely on the shoulders of this Court,[2]

---

[2] In fact, Plaintiffs' very description of the burden that they seek to avoid, Pls.' Summ. J. Mem. 8, demonstrates exactly why it is inappropriate to transfer that burden to this Court to bear on its own. Plaintiffs state that they have to incur

> the administrative burdens of collecting, organizing and responding to Kissi's frivolous claims, to the detriment of BANA and SLS's regular business operations. Kissi's filings are voluminous and typically difficult to decipher. It is hard for Plaintiffs to determine where one case ends and the next begins, thus it is

notwithstanding that the Court's existing prefiling injunction adequately has protected it and them against the burdens of Defendants' vexatious litigation. The parties have not cited any case that addresses this unusual scenario, and I am aware of none.

The only conceivable way to resolve this tension is to consider the nature of the different burdens faced by Plaintiffs and the Court. On the one hand, although the legal fees incurred by Plaintiffs would be substantial—even crippling—to many individual litigants, those fees pose far less burden on the Plaintiffs. According to BANA's Form 10-Q[3] filed with the Securities Exchange Commission in September 2014 (the most recent available in the SEC's EDGAR database), BANA's total quarterly revenue for the third quarter of last year alone was over $21 billion and their pre-tax income was $431 million. Although it is considerably more difficult to obtain information about the finances of SLS because of their status as a limited liability company, they identify themselves as "a leader in servicing the mortgage industry for more than ten years," *Performing Servicing*, SLS, http://www.sls.net/Investors/Performing-Servicing/ (last visited March 10, 2015),[4] and are represented by the same counsel as BANA, suggesting that

---

hard to categorize what is a new claim, what is an old claim, and what papers require some kind of response.

*Id.* Absent from Plaintiffs' analysis is any explanation of how this burden would be any lesser for this Court than it is for them, or how the Court's resources are greater than Plaintiffs' to address them. Nor do Plaintiffs address the fact that the prefiling injunction already put in place by this Court already protects it and Plaintiffs from abusive litigation from Defendants in this Court. Why this Court also should undertake further burdens of the kind described by Plaintiffs to protect them from filings in *state* court—when Plaintiffs surely could have filed this suit there to seek a statewide injunction—they fail to explain.

[3] I take judicial notice of the existence and contents BANA's SEC filings under Fed. R. Evid. 201, *see In re Mun. Mortg. & Equity, LLC, Sec. and Derivative Litig.*, 876 F. Supp. 2d 616, 626 n.7 (D. Md. 2012), and the statements therein are admissions by BANA under Fed. R. Evid 801(d)(2)(A).
[4] The existence of SLS's website also is judicially noticeable, Fed. R. Evid. 201, and its contents admissions by SLS, Fed. R. Evid. 801(d)(2)(A).

they, too, are able to absorb the costs of litigating against Defendants. At the very least, neither plaintiff has satisfied its obligation to show that the legal costs they claim resulted in a meaningful burden. Indeed, compared to these figures, Plaintiffs' legal costs in the fourteen cases that they have had to defend against Defendants hardly can be viewed as a substantial threat to their bottom line were they to have to continue to bear the cost of responding to future claims against them by Defendants in state court.

This is not to say that the Court is without any power to protect Defendants from abuse or otherwise is unwilling to do so, if appropriate. It already has minimized the harm that Kissi and Truvillion can inflict by refusing to allow them to bring meritless cases here, whether against Plaintiffs or anyone else. But doing so was as much an attempt to protect the limited resources of this District from being usurped by vexatious litigants such as Kissi and Truvillion as it was to protect litigants from constant and frivolous litigation. Just as this Court has refused to be a personal trampoline on which Kissi and Truvillion may expend their excess energy and hostility—enjoining and, when it became necessary, incarcerating Kissi—it also cannot serve as a personal bodyguard to protect BANA and SLS from frivolous lawsuits brought elsewhere. There may be circumstances in which a party would be entitled to have a Judge of this Court intervene on its behalf to protect against frivolous suits in other jurisdictions, but those circumstances certainly do not exist on the record before me, where it is clear that attentive and astute judges in other courts promptly have dismissed every claim Kissi and Truvillion have brought against Plaintiffs and, in many cases, entered prefiling injunctions of their own. And there is no reason to imagine that state court judges, faced with the indisputable evidence of Defendants' frivolous and vexatious litigation, would lack the ability or inclination to enter appropriate relief for Plaintiffs. Nor do Plaintiffs explain why they could not have filed this suit

in state court to seek a state-wide injunction.[5]  In light of that and of the respective burdens on

the court and on Plaintiffs, I find that, based upon the undisputed facts, an injunction is not

appropriate as a matter of law.  Accordingly, Plaintiffs' motion for summary judgment will be

denied, and Defendants' cross-motion for summary judgment will be granted.

### B.  Motion for Reconsideration

Also pending is Defendants' Motion for Reconsideration of Letter Order Dated

2/10/2015 ("Defs.' Mot. for Reconsideration"), ECF No. 98.  Plaintiffs have not responded to

Defendants' Motion to Reconsider, nor need they do so.  The Case Management Order in this

case clearly states that no party may file a motion without first being granted leave to do so and

no motion may "seek any relief already sought and denied by the Court unless that denial was

expressly without prejudice or" the party seeking such relief provides specific support that was

not and could not reasonably have been available at the time of the original request.  Case

Management Order ¶¶ I.A.1, I.A.7, ECF No. 40.  Defendants did not seek or receive leave to file

a motion to reconsider and, in any event, it does not appear to set forth sufficient new grounds to

satisfy the Case Management Order.  Therefore the motion will be STRUCK as improperly

filed.[6]

---

[5] The Maryland Court of Special Appeals recently expressly held that a circuit court may issue a prefiling injunction under Maryland Rule 15-502, *Riffin v. Circuit Court*, 985 A.2d 612 (Md. Ct. Spec. App. 2010), and there is no reason to believe that such an injunction would be subject to more stringent geographical limitations than other, similar injunctions barring parties from engaging in abusive conduct, *see, e.g.*, *Davidson v. Seneca Crossing Section II Homeowners Ass'n, Inc.*, 979 A.2d 260 (Md. Ct. Spec. App. 2009) (affirming injunction that, *inter alia*, prohibited appellant from initiating contact against appellees and others).

[6] Because this Memorandum Opinion and the accompanying Order grant judgment in favor of Kissi and Truvillion, the Motion for Reconsideration also is moot and, were it filed properly, would have been denied on that basis in any event.

## IV. CONCLUSION

In sum, for the reasons stated above:

Plaintiffs Bank of America, N.A. and Specialized Loan Servicing, LLC's Motion for Summary Judgment, ECF No. 77, will be DENIED; Defendants David Kissi and Edith Truvillion's Cross-Motion for Summary Judgment, ECF No. 80, will be GRANTED; and judgment will be entered in favor of Defendants; and

Defendants' Motion for Reconsideration, ECF No. 98, will be STRUCK.

A separate order shall issue.

Dated: <u>March 16, 2015</u>                                    <u>           /S/                    </u>
                                                                            Paul W. Grimm
                                                                            United States District Judge

dsy